**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 27th day of January, 2012.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

LONE STAR PUB OPERATIONS, LLC,      Case No. 09-22208
      Debtor.     Chapter 7

---

CHRISTOPHER J. REDMOND,
Chapter 7 Trustee,
     Plaintiff,

    v.     Adv. No. 10-6134

RAINSTORM, INC., et al.,
     Defendants.

---

MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND
GRANTING JUDGMENT IN FAVOR OF DEFENDANTS

The Trustee sued Defendants Rainstorm, Inc., Stephen J. Davis, Silver Tree Gordon, and Keith Lawyer to avoid a $150,000 transfer as preferential or fraudulent under 11 U.S.C. §§547 or 548. The motion for summary judgment is denied because the property at issue never belonged to Debtor or its estate. Judgment shall be entered in favor of Defendants.

**Findings of Fact**

Before October 17, 2008, Defendants Rainstorm, Inc., Silver Gordon and Stephen Davis owned Debtor Lone Star Pub Operations, LLC. Defendant Keith Lawyer was Rainstorm's president, and Rainstorm was Lone Star's managing member. On October 17, Defendants agreed to sell Lone Star to Mary Weingarden for $150,000. The Letter of Agreement between the parties assigned 100 percent of Defendants' membership interests in Lone Star to Weingarden. Weingarden borrowed the purchase money from Mark McLean. The parties planned for Weingarden to wire the money directly to Rainstorm, which is in Texas. However, McLean loaned the money to Weingarden in the form of a check drawn on U.S. Bank. McLean required Weingarden's name be on the check. Lone Star also banked at U.S. Bank. Since sending the check via Federal Express to Texas would further delay the closing, the parties agreed to deposit McLean's check into Lone Star's account and then wire the purchase money out of the account to Rainstorm. The check's deposit into Lone Star's account and the wire transfer out of Lone Star's account to Rainstorm both occurred on October 23, 2008. The transfer was overseen by an employee at Western Entertainment Management, Inc., a management company which handled financial reports for both Lone Star and Rainstorm.

Pinnacle TIC, LLC, one of Lone Star's largest creditors, filed an involuntary bankruptcy petition against Lone Star on July 1, 2009. Pinnacle was Lone Star's landlord. At the time of the sale, Lone Star owed Pinnacle $34,228.84 for rent.

**Conclusions of Law**

A. **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates there is no genuine

- 2 -
12.01.26 Redmond v Rainstorm SJ.wpd
Case 10-06134   Doc# 40   Filed 01/27/12   Page 2 of 8

issue as to any material fact, and he is entitled to judgment as a matter of law.[1] The movant bears the initial burden of proving the absence of controverted facts.[2] All inferences are to be construed in favor of the nonmoving party.[3] Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper.[4]

Federal courts may enter summary judgment *sua sponte* in favor of a nonmoving party if the losing party is given sufficient notice and an opportunity to come forward with evidence in opposition.[5] The court may enter judgment provided there is no dispute of material fact and the losing party had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment.[6] Judgment is still predicated on Rule 56's standards, even without a formal motion. If the evidence submitted by a party who would not have borne the burden of persuasion at trial establishes the plaintiff lacks evidence supporting an essential element of the claim, the nonmoving party may show he is entitled to judgment.[7] If the nonmoving party carries his initial burden, the plaintiff must come forward with specific facts showing a genuine issue for trial.[8]

Plaintiff moved for summary judgment. The Defendants responded, but did not file a cross-motion for summary judgment. Instead, while defending against Plaintiff's motion, Defendants presented evidence showing Lone Star did not have an equitable interest in the

---

[1] FED. R. BANKR. P. 7056.
[2] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[3] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).
[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).
[6] *David v. City & County of Denver*, 101 F.3d 1344, 1358-59 (10th Cir. 1996).
[7] *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000).
[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

$150,000 and that Lone Star momentarily held the purchase money funds for Rainstorm. Plaintiff was on notice and had sufficient opportunity to show a genuine issue of material fact with respect to ownership of the transferred funds in order to proceed to trial. Plaintiff failed as follows.

**B.    The Trustee's Claims**

The trustee must prove six elements by the preponderance of the evidence to avoid a preferential transfer: (1) a transfer of the debtor's property, (2) on account of an antecedent debt, (3) to or for a creditor's benefit, (4) while the debtor was insolvent, (5) within 90 days prior to bankruptcy (or one year for insiders), (6) which allowed the creditor to receive more than it would if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation.[9]

Likewise, to avoid a fraudulent transfer the trustee must prove the debtor transferred his assets for less than a reasonably equivalent value and was insolvent, undercapitalized, or unable to pay his debts as they became due at the time of the transfer.[10]

In this case, the first element is dispositive. The threshold requirement for both causes of action is the property transferred must have belonged to the debtor. Avoiding preferential and fraudulent transfers recovers property which would have been available for distribution to creditors but for the transfers.[11] If the debtor's estate is not diminished by the transfer because the debtor did not have an equitable interest in the property, the property is not recoverable under §§547 and 548.[12]

---

[9] 11 U.S.C. § 547(b); *ABB Vecto Gray, Inc., v. First Nat'l Bank of Bethany, Oklahoma* (*In re Robinson Bros. Drilling, Inc.*), 9 F.3d 871, 874 (10th Cir. 1993); 11 U.S.C. § 547(g).

[10] 11 U.S.C. §548.

[11] *Begier v. IRS*, 496 U.S. 53, 58 (1990).

[12] *Id.* at 58-59.

C.      The Debtor's Property

A bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy. State law determines property ownership.[13] Federal bankruptcy law determines the extent to which a property interest becomes estate property.[14] Property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case.[15] Property subject to a trust is not property of the bankruptcy estate.[16] The equitable title or interest held by a nondebtor is neither property of the estate under §541 nor property of the debtor under §§ 547(b) and 548.[17]

The trustee has the initial burden to prove the debtor had legal title to a bank account and unfettered discretion to pay creditors of its own choosing out of the account.[18] Generally, funds in the debtor's bank account are estate property when the debtor has control over its use, including paying its own creditors.[19] Control means the legal right to use the funds.[20] Control does not mean the ability to steal the money or use it for personal purposes in breach of duty. Under Kansas law, ownership of funds held in a bank account is not necessarily determined by the name on the account.[21] Creditors may not attach the debtor's account if the debtor proves the funds do not belong to the debtor.[22] The trustee carries his burden by proving the debtor held legal title to the account, and the account consists of commingled trust and personal funds.[23] If

---

[13] *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).
[14] *Parks v. FIA Card Svcs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).
[15] 11 U.S.C. § 541(a)(1).
[16] 11 U.S.C. § 541(d).
[17] *Begier v. IRS*, 496 U.S. at 59.
[18] *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1451 (10th Cir.1996); *Southmark Corp. v. Grosz (Matter of Southmark Corp.)*, 49 F.3d 1111, 1116-17 (5th Cir. 1995).
[19] *See, e.g., Matter of Southmark Corp.*, 49 F.3d at 1116.
[20] *Jenkins v. Chase Home Mortg. Corp. (Matter of Maple Mortg., Inc.)*, 81 F.3d 592, 596 (5th Cir. 1996).
[21] *LSF Franchise REO I, LLC v. Emporia Restaurants, Inc.*, 283 Kan. 13, 25 (2007).
[22] *Id.*
[23] *In re Amdura*, 75 F.3d at 1451; *Matter of Southmark Corp.*, 49 F.3d at 1116.

the trustee carries his burden, the burden shifts to the defendant to show the debtor held only legal title, and the defendant can trace its equitable interest to the specific property at issue. The defendant must establish the original trust relationship by proving his title, identifying the trust fund, and where the fund has been mingled with the general property of the debtor, the claimant must sufficiently trace the fund.[24] Under Kansas law, an express trust of personal property requires (1) an explicit declaration and intent to create a trust, (2) definite property or subject matter of the trust, and (3) acceptance and handling of subject matter by a trustee.[25] An oral trust over personalty is valid under Kansas law.[26]

**D.     Analysis**

Plaintiff failed to carry his ultimate burden to prove the $150,000 transfer diminished the Debtor's estate to the detriment of its creditors. Defendants, on the other hand, prove an express trust under Kansas law. Lone Star owned the bank account into which Weingarden deposited $150,000, but Lone Star did not own the purchase money. Lone Star did not control the funds and could not pay its creditors with Weingarden's deposit. Lone Star did not have a debtor-creditor relationship with Weingarden and received nothing from the deposit, but rather served as a mere conduit for facilitating the transfer of funds from the purchaser to the seller. The Defendants show Lone Star momentarily held legal title to the funds, but Rainstorm was the true owner. The Defendants successfully trace the funds because the money was immediately wired out of Lone Star's account to Rainstorm. The entire transfer was under the supervision and

---

[24] *Sender v. The Nancy Elizabeth R. Heggland Family Trust ( In re Hedged-Investments Assoc., Inc.*), 48 F.3d 470, 474 (10th Cir. 1995).
[25] *Shumway v. Shumway*, 141 Kan. 835, 842 (1935).
[26] *Wehking v. Wehking,* 213 Kan. 551, 553 (1973).

- 6 -
12.01.26 Redmond v Rainstorm SJ.wpd

Case 10-06134   Doc# 40   Filed 01/27/12   Page 6 of 8

control of Rainstorm's agent - not Lone Star's. Neither Lone Star nor Lawyer had authority to exert control over the deposit except to transfer the funds to Rainstorm. Rainstorm explicitly directed Lone Star to receive the deposit on its behalf because Lone Star banked at the same institution as the purchaser's lender. The trust property was defined as the $150,000 deposit to be received on a particular day from an identified source. Lone Star accepted the duty and completed its duty by immediately transferring the funds to the equitable owner. Rainstorm then transferred its entire interest in Lone Star to Weingarden. The evidence establishes the $150,000 satisfied Weingarden's debt to Rainstorm in exchange for the purchase of Lone Star. The transfer did not satisfy any debt between Lone Star and Rainstorm.[27]

Plaintiff met his initial burden to prove Lone Star held legal title to the bank account and the account contained commingled funds. The burden shifted, and Defendants met their burden to prove ownership of traceable, specific property. Plaintiff does not controvert Defendants' evidence in this regard. Accordingly, summary judgment in favor of Defendants is proper as a matter of law.

### E. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED. By separate order, judgment shall be entered in favor of Defendants.

IT IS SO ORDERED.

###

ROBERT D. BERGER

---

[27] The parties briefed whether an antecedent debt existed between Lone Star and Rainstorm, but Weingarden's purchase money did not satisfy any debt Lone Star may have owed Rainstorm, whether that debt is characterized as a capital contribution or a loan.

- 7 -

12.01.26 Redmond v Rainstorm SJ.wpd

Case 10-06134   Doc# 40   Filed 01/27/12   Page 7 of 8

U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS